Your honors, may it please the court, this case is about the propriety of registering the Bose 901 design mark that has been exclusively used for 30 years, 23 years after the decision of this court. Is that what the case is about? Or is it whether there's res judicata based on an early decision? Well that's one of the issues in here, is res judicata. Yes, your honor, and I thought it would be helpful before discussing the refusals on res judicata to consider some of the reasons why we have a registration system for registering marks. And if you want to get on to the area of res judicata, which is an important area. That was the ground of the decision below, right? That was one of the grounds. The other alternative grounds was the ground of functionality. Which was decided by the first decision of this court as well, right? That is correct, your honor. And so if you want to get into res judicata, which is, I would suggest that we take a look at what Judge Rich said in a comparable case, in a patent case, in In Rec Re, that was cited by the director in the director's brief on page 19. It's at 411 Fed Second, and particularly 1335 and 36. While res judicata has its proper place in the law as a reflection of policy invoked to settle disputes and put an end to litigation, the prosecution of patent applications is not exactly either a dispute or litigation in the usual sense of these terms. There are additional public policy considerations which have bearing here, namely, furtherance of the policy inherent in the patent laws to grant patents when the patent office finds that patentable inventions have been disclosed and properly claimed, so that inventions are made public through the grant, I suggest that the same considerations apply in connection with applying for registration of trademarks. That what we're trying to do with the register of trademarks is we're trying to set a public record that corresponds to the substantive rights of, say, the registrants. The register performs a very important function of letting the public know what marks are being used and what marks are owned by a registrant, so that when we go out and we get a client who comes to us and says, gee, can I use this particular mark, we can go to the register and it helps us avoid using it, or in the case of, say, a possible infringement, why the registration owner can then go to the person who may be an infringer and say, look, we've got a registration on it. Now that's important from that aspect that we want to be able to have the register reflect the substantive rights. Now looking at this specific case here with this specific mark, we have an example of how someone has appropriated the exact mark that we seek to register here without appropriating any of the functions of the 901 loudspeaker system, and you'll find that on page A80 and 81. It's the ULITE copy. But if that shape, and we're talking about a shape here, aren't we? If that shape is functional, do you have any entitlement to rights in that particular shape? We have, if it is functional, but what is functional? Well hasn't this court already decided it's functional? Well, I'd like to suggest... The back of the speaker, and so that suggests that you need an angle coming off of the walls you're going to bounce the sound off of. And that, as this court seemed to say in 1985, suggests the Pentagon shape with the bowed front. Your Honor, I'd like to suggest that if you go again to NREC Craig, for example, there is an application where it was a continuation, basically, and what happened in the course of that... If it's functional, and it's been adjudicated functional, do you have any rights in the mark? You've made a very beautiful speech here about how the register gives notice to the public, but do you have any rights if it's functional? You have... You need to, I think, look at what happened in traffics as to what the Supreme Court is talking about functionality, where it points out that there may be design features of it that are subject to protection. Now look what this court said in the prior decision in Bose 1. In Bose 1, it distinguished the mark registered in 992982 on the grounds. Well, that isn't just the pentagonal cross-section, that also includes the overhang and the wraparound grill cloth. Well, what's the difference between what we're seeking to register here, which is substantially pentagonal cross-section with the curved front edges, which are plainly not functional? And I think this court got it right in the Pennington case as to what traffics holds and says that you need to look at the patent claims to see if the feature is claimed. Now, in neither patent are the curved front edges claimed as a feature. Also, you can use a patent to explain, say, function if the patent discloses utilitarian advantages for the feature. You won't find any disclosure in any patent, any advertising. Do I understand you correctly to be arguing that the one non-functional feature is the curved front? Everything else you will concede to be functional? No, that is not correct, Your Honor. Because as Judge Rich pointed out in the Norwich-Martin case, says the crux of the matter is the availability of alternate competitive designs. Now, there is no utilitarian advantage attributed to the pentagonal cross-section. There is evidence in the record. But the prior case had the design with the curved front edge in it. That's not new. No, it isn't new, Your Honor. And the opinion in that case says we look at the entirety of the design and it expressly mentioned that there was a curved front edge. Well, it mentioned a bowed front, Your Honor. But that is true. But it did not discuss this as being a non-functional feature. It did not. I didn't have the benefit of it. That court did not have the benefit of traffics telling us to look for non-functional features and telling us to look at the claims for non-functional features. So it is a different situation. What is the non-functional feature here, given that we've even got a patent here that shows the shape and discusses the bouncing off the back of the pentagonal shape? No, there's no problem with that, Your Honor. Then what's the non-functional feature? The non-functional feature is that it has to be pentagonal. Both Dr. Bose and Mr. Greenblatt testified under oath in trials that, look, what was first proposed to do was to make this speaker a rectangular cross-section. And if you look at the testimony of Dr. Bose in there, too, you also see that Dr. Bose says it would have been cheaper to do it that way. The 3582553 patent to Dr. Bose comprises two angularly displaced rear rectangular baffles and then shows the precise pentagonal shape with the speakers coming out of the back, bouncing off the back wall, suggested by, and the pentagon seems to be the key to that whole function working. The function is having the angled panels, Your Honor, which does not necessarily mean that you have to have the enclosure be pentagonal. Is there something to the fact that the 553 patent, I don't think, has a curved front edge? It does not, Your Honor. Is that a significant fact? Well, it is, yes, Your Honor. Or is that overcome by the fact that the first Bose decision did have a curved front edge, and that was held to be functional? No, I don't believe it was. I do not believe that the court ruled that the bowed front edge, or the curve, was functional. But we're dealing with the overall design. What the court did that time is it said it was not clearly erroneous, the finding of the Trademark Trial and Appeal Board. Here, we're involved with a situation where, is there substantial evidence to support it? And the court, what happened in the board below is that there is no substantial evidence to really support it. There is nothing in any of the literature or the patents which attribute a utilitarian advantage to what is here now. Now, you're saying, well, we're talking about the curved front edges now. But if you look at, in the Craig case, in the continuation case, Judge Rich said, it's perfectly okay to take into consideration these issues. Mr. Heikkens, you've mentioned Judge Rich three times. Yeah. He's not on this panel. He doesn't have this case. He wasn't on the first Bose case. And when he wrote in a prior case, he was writing for a panel, too. Yes. So, I mean, invoking the name Judge Rich doesn't win your case. Well, certainly, Morton Norwich was a case that we're following, too, which was written by Judge Rich. And what he said on that case, too, he says, trademark rights are not static, and that the right to register must be determined on the basis of factual situation. As of the time when the registration is being sought, what we have in mind is that the factual situation may be different in 1982 than it was in May 1978. And that's the case today, too. If what we're trying to do is to get a proper register of marks on there that could conform to substantive rights, then this mark ought to be registered. Now, this is not a tragedy to register the mark, because it's all that's going to happen is that it gets published for opposition. Those who believe they will be damaged by the registration can oppose if they do, which is not likely to occur in view of the long period of exclusive use of this. And you can look at the Honeywell case and see what happened. That the board at that time, when they registered it the second time, said, of course, one would be free to go ahead and introduce evidence that the mark was not properly registrable. You wanted to save two minutes of your time, Mr. Huyken. You are into that period. You can use it or save it. I'll save it for later. Thank you, your honors. Mr. Weyland. Thank you, your honor. May it please the court, if res judicata does not apply in this case, then I think you should say so, because then I don't think it would apply in any case. I can't think of a stronger case where res judicata would apply. We have the same marks as conceded in the brief in page five, as shown in our brief on the first page. You have the same parties. You have the same arguments that were either made or could have been made. And in fact, they were made, if you look at the close one decision. What about the temporal point, Mr. Weyland? Time has transpired 20, 30 years now. What- And that will always be the case, your honor, whenever anybody brings a second case. Difference of time, though, there's been an awful lot of commerce in Bose commercial products. Could those have endowed this with secondary meaning? Is that relevant? It wouldn't make a difference in this case, as you pointed out by the end of your question. I think it's a fair point to say that could time in a given case where, for example, let's say it was rejected based on descriptiveness, and then five, ten years go on and they show secondary meaning. And they brought that back in and showed that evidence. I think rejudicata would not apply in that case, and I think there would be new evidence and new issues. But when you're considering an issue of functionality, which is a question of fact, and it's been found by both the board and this court. You question what evidence could ever be shown to show it's no longer functional. It either is or it isn't. And as the Supreme Court stated, secondary meaning is irrelevant to the issue of functionality. Functionality means it can never be registered, whether or not the issues require secondary meaning or not. So the time hasn't passed, the issues are the same, the marks are the same. As to the focus on the curved front edge- Mr. Huyken suggests that traffics has somehow changed the landscape here. I think respectfully reading that opinion, it has, I would say what it's done to the Morton Norwich factors, as the court recognized in value engineering, it didn't say you can't use them. But if you look at the weight it places on the first prong of when you have patents, utility patents. Here we have two, and your honor, you only discussed one of the patents. If you look at the second patent, I think it's a 745 patent, it actually has, if I direct your court's attention to the page, it's the 745 patent on the front page at A523, which is the later patent issue, 523 of the appendix. 8523. 8523. There it is, that has the identical curved front edge in the design. So what the court did in traffics was say, when you have patents that disclose, not simply claim, but disclose, you have a heavy burden, you have a heavy presumption to overcome. It is strong evidence. They said it in four or five different ways to overcome it. They didn't say you could never do it. If you look at the end of the opinion, there was an argument that said you could never get trade protection if there was a patent. They didn't say never, but they said, we'll wait and see for that case before we have to address that issue. So if anything, the law that applies here, which I think to be fair, the court recognized, clairvoyantly employed pose one, applied. If you read the pose one opinion, it focused on the patents, it focused on the same line of reasoning. What people were trying to say in traffics was, well, you could claim it a different way, you could design it a different way, and the Supreme Court said, we don't care. But traffics does stand for the principle, does it not, that ornamental features in an otherwise functional device might deserve some protection. Exactly. Do we have to parse what was ornamental out of this as opposed to what's functional? As we cited in our brief, they said those ornamental features might serve trade risk protection. That is not what they're trying to get protection on here. Even if you were to assume, possibly, and I don't concede this point, because if you look at the 745 patent, it discloses the curved frontage. But even if you were to say there's some feature on here that might be ornamental, then you have to actually claim that feature, not the whole mark. And they have not done that here. The Supreme Court said that feature might deserve trade risk protection. So you could consider the example of the ice shaker with a, and they put a penguin on top. Well, the shaker itself might not be protectable, but the penguin might. And the way you do that, it's been expected, is you draw dotted lines around the part that you're not trying to protect. So if the curved frontage is so critical, then what they would do here is take the design and draw dotted lines around the pentagonal description. But if they did that, it would be a completely different case. There'd be searchable, they'd have to, one, decide whether or not the curved frontage is ornamental. And if you look at the patent that I just cited to you, I think it's in this patent. It's in the previous patent, the 5-5-3, yeah, the 5-5-3 patent, Your Honor, at page 539, figure two, figure one, although those aren't curved, they show how the front placement of the speaker makes a difference in how the things are firing. And they want them all to land at the listener at the same time. So I think the court, it would be a completely different case. And they'd have to be the first people to have a curved frontage on their speaker. And that's not necessarily true. I mean, I don't even know if that would be true as of the date they claim. If you get to the functionality issues here, the point that I think that hasn't been addressed in my response is that the issues here, Mr. Harkin kept talking about the Craig case, it was a patent case, a CCPA case. And it essentially said, if you put in enough new evidence, you can overcome res judicata. But this court has never said that in the trademark context. And this isn't something we are trying to not do. It's an application, we'll examine it. But you question whether competitors, once those patents go off term, whether or not, they should know whether or not they can practice this. If you allow this to continue over and over and over again, I think what'll happen is competitors will never know. He could just reapply five years from now, and we'd have more time and more arguments. And if you look at the arguments that are made in this case, curved frontage, we've already discussed how that was. Although the word curved was used in Bo's one, the word bowed was used. And if you look at the appendix at page A346, that's this case. If you look four or five lines down, it's a menu B. He originally used bowed in this application. And then, if I could direct your attention to A286, it's a later amendment, it's on the left side of the page, halfway down. He just switched the description from bowed to curved. So if I just describe a picture, the same picture two different ways, it can't change an earlier decision. The other two arguments that are mainly made are whether or not you can have different designs. The court recognized in the first Bo's one case it really did make a difference. If this design is functional, that means the other designs are irrelevant. And the last point is whether or not you can make it cheaply. This argument was again made in Bo's one. And they said even if it could be made cheaper, the court noted that the patents disclosed you could make it cheaper and inexpensively and it was a feature and therefore it was functional. Following again the reasoning of traffics that if you can identify ornamental features, they deserve some protection. Why wouldn't we perhaps apply a test of potential alternative designs accomplishing the same function and determine that there are many shapes besides a pentagon that could bounce off all walls to accomplish the function and then give some ornamental status to this particular pentagon? Well, I think there's two answers. First of all, as the court said in Bo's one, logic dictates that the simplest way to do it would just be to cover the pentagon, not to put it in a bigger box. So therefore, that means just because there may be other boxes, that doesn't detract from whether this is functional. And secondly, those same arguments were made in Bo's one at Page. It's hard to find the jump site sometimes. It's not 866. But if I could quote from you what they say, they said, further, the matrix of Bo's systems could be enclosed in commercially acceptable circular or octagonal or four-sided housings. And the court said, quote, such considerations, however, cannot change the utilitarian nature of the five-sided housing for a five-sided mechanism. So they said it doesn't make a difference. It's kind of like we're going to focus on not what we're doing, but what other people might be able to do. And what the court said in traffics, where that argument was made, they said you could make three springs, hidden springs, three parts that we don't care. If this design itself is functional, we stop. And I think that's what the court's held in Bo's one. I think the traffics court reinforces that point. And I don't think there's been really even any new evidence put on in this case. A, that couldn't have been on before, but even really, it's not very new. It's just a different statement of the same evidence. And therefore, there's no reason to disturb this court's holding in Bo's one. The last point I'd make is just procedurally, I don't know how this court could disturb Bo's one without all this going on Bo. Just to caution the court, I mean, we didn't say that in our brief, but it's the same facts, it's the same law, it's the same holding. Traffics didn't change it, and it would be hard, I guess, unless it was completely different, to even alter that decision just as bad. If the court has no further questions, I will be seated. Thank you, Mr. Whalen. Mr. Heiken has two minutes left. Thank you. First of all, in response to your question about the alternative designs. In Martin Norwich, it was said, and this is on page 1341, since the effect upon competition is really the crux of the matter. It is, of course, significant that there are other alternatives available. The very fact that we're concerned about traffics in this case says, we ought to take a new look at this situation, that there oughtn't to be a race judicata bar in this particular case. Regardless of the other evidence, which is also here in this case, that it has been used for so long without anyone else feeling it necessary to get in and copy this particular product, and the only evidence is of where someone comes in and copies the exact mark that Boze is seeking to register. From the standpoint of evidence, there's the West case that we've cited there, which says that a witness is presumed to tell the truth. That means that both Mr. Greenblatt and Dr. Boze are presumed to tell the truth. Now, if you look at some of the words in the opinions of the board below, it appears as if they're forming conclusions that really require expert knowledge to do. And they are not experts in the field of audio, would not pass the Daubert test to testify in this area. So for these various reasons, we submit that the case ought to be reversed. Let it go back to the office there published for opposition by anyone who believes he will be damaged. And it's still open to the entire public to make oppositions to the positions that we have raised here. Thank you, Your Honor. Thank you, Mr. Hyken. We have your case. The case will be taken under advisement.